UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL McELROY,<br><br>                                       Plaintiff,<br><br>v.<br><br>PERNOD RICARD USA, LLC, et al.,<br><br>                                       Defendants. | Case No.:  23-CV-2183-CAB-VET<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND TO EXCLUDE EXPERT TESTIMONY**<br><br>[Doc. Nos. 117–124] |

Before the Court are Defendants' motions for summary judgment and both parties' motions to exclude certain experts. [Doc. Nos. 117–124].  The matters have been fully briefed, and the Court held argument on January 23, 2026.  Having considered the submissions of the parties and the arguments of counsel, the motions are **GRANTED** in Part and **DENIED** in Part as set forth below.

I.      Background

Plaintiff April McElroy ("McElroy" or "Plaintiff") was injured while attempting to open a bottle Mumm Napa Valley Brut Rose, a sparkling wine.  The bottle broke causing lacerations to her left hand.  McElroy has filed claims for her injuries against Defendants Pernod Ricard USA, Inc. ("Pernod"), Southern Glazer's Wine and Spirits LLC, ("Glazer") and Garfield Beach CVS LLC ("CVS"), (also collectively "Defendants").

1

Her complaint alleges: (1) strict liability for manufacturing defect; (2) strict liability for design defect; (3) strict liability for failure to warn; (4) negligence for failure to warn; and (5) negligence.  Based on the evidence presented by the parties, the Court finds the following material facts undisputed.

On December 18, 2021, McElroy purchased a bottle of Mumm Napa Valley Brut Rose ("Sparkling Wine") at a CVS store located in Chula Vista, California.  The Sparkling Wine was bottled and sold by defendant Pernod through Defendant Glazer, a wholesale distributor, to Defendant CVS, a retailer.

McElroy had purchased similar Pernod products previously in the one to two years preceding her December 2021 purchase, approximately one to two bottles a month during the summer months for an estimated 3 to 12 purchases.  [Doc. No. 125-1, at 8.[1]]  McElroy had never experienced a problem opening her previous purchases of the Pernod product.  [*Id.*, at 10.]  McElroy looked at the labeling on previous purchases of the Pernod product to consider the alcohol level and sometimes the ingredients.  [Doc. No. 122-15, at 21.]

McElroy took the Sparkling Wine to the home of Vanessa Knight.  [Doc. No. 124-4, at 21.]  The Sparkling Wine bottle was intact when McElroy purchased it and when she arrived at her location.  [Doc. No. 125-10, at 5.]  McElroy did not chill the Sparkling Wine before attempting to open the bottle.  [Doc. No. 124-4, at 23.]  Vanessa Knight and her son Terrel were present when McElroy initially attempted to open the Sparkling Wine.  [*Id.*, at 35–36.]

McElroy removed the foil cover and untwisted the wire cage covering the cork.  [*Id.*, at 24.]  McElroy attempted to pull the cork from the bottle but was unable to remove it.  [*Id.*, at 36, 45.]  Terrel then attempted to pull the cork from the bottle and was unable to do so.  [*Id.*, at 34–35, 48.]  Vanessa Knight's other son Perris Lewis then came to the kitchen and attempted to pull the cork from the bottle with his hand.  He too was unable to remove

---

[1] Page references are to the CM/ECF assigned page number.

23-CV-2183-CAB-VET

it by hand.  [*Id.*, at 51, 54–56.]  At some point during these attempts to remove the cork, the top of the cork broke away leaving a portion in the neck of the bottle.[2]

McElroy testified she read the back of the bottle to see if there were instructions for what to do if the cork broke.  [Doc. No. 122-15, at 13–14.]  She testified that the label did not advise against using a corkscrew.  [Doc. No. 140, at 9; Doc. No. 122-15, at 13–14.][3]

McElroy attempted to open the Sparkling Wine by inserting a corkscrew into the remaining cork.  [Doc. No. 124-4, at 42.]  During McElroy's attempt to remove the cork from the Sparkling Wine bottle with the corkscrew, the top of the glass bottle blew off leaving sharp edges all the way around.  McElroy's left hand that was holding the bottle slipped down onto the jagged edge causing a deep laceration.  [*Id.*, at 43.]  The broken bottle and the cork were disposed of without any record of their condition after the injury.

Prior to September 2013, bottles of Pernod's Mumm Napa Valley Brut Rose carried the following label:

*CAUTION: Contents under pressure.  After chilling, point bottle away from yourself and others while opening and please use extreme caution, holding the cork at all times.*

From September 2013 to October 2014, bottles of Pernod's Mumm Napa Valley Brut Rose carried the following label:

*CAUTION: Contents under pressure.  After chilling, slant bottle at 45 degree angle away from yourself and others.  Holding the cork at all times, gently twist the bottle until the pressure pushes the cork out.  Never use a corkscrew!*

/////

/////

---

[2] The cause of the cork breaking apart is disputed.  Perris Lewis testified when he could not remove the cork with his hand, he inserted a corkscrew into the bulbous portion of the cork, and it broke into pieces. [Doc. No. 124-4, at 56.]  McElroy testified that the top portion of the cork crumbled when she pulled on it.  [Doc. No. 122-15, at 12.]

[3] The specific cautions on the label of the Sparkling Wine at issue are in dispute, however, McElroy has testified and taken the position before the Court that she did read the label and saw no caution advising against the use of a corkscrew.

23-CV-2183-CAB-VET

From October 2014 to August 2017, bottles of Pernod's Mumm Napa Valley Brut Rose carried the following label:

*Use caution, contents under pressure.  Always chill bottle and open away from yourself and others.  Never pry cork or use a corkscrew.*

After August 2017, bottles of Pernod's Mumm Napa Valley Brut Rose carried the following label:

*The contents of this bottle are under pressure.  Slant bottle at 45 degree angle and point away from yourself and others before removing hood.  Holding the cork, gently twist the bottle slowly in one direction until the pressure pushes the cork out.  Never, in any circumstances, pry the cork or use a corkscrew or any other implement when opening this bottle.*

II.   Legal Standard

Defendants jointly move for summary judgment on the asserted causes of action. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Reasonable inferences must be drawn in the nonmoving party's favor, but such inferences are limited to those upon which a reasonable jury might return a verdict.  *U.S. ex. rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1995).  The non-movant must do more than make conclusory allegations in an affidavit.  *Celotex*, 477 U.S. at 324.

In diversity cases, such as this, the Court applies the substantive law of the forum state, in this case California.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). /////

23-CV-2183-CAB-VET

III.    Discussion

A. Claim for Strict Liability for Manufacturing Defect

Plaintiff confirmed at the hearing that she has abandoned her claim of strict liability for manufacturing defect.  The Defendants' motions for summary judgment on that claim are therefore **GRANTED**, and the claim is dismissed with prejudice.

B. Claim for Strict Liability for Design Defect

Design defects exist where a product is built in accordance with its intended specifications, but the design itself is inherently defective.  *Barker v. Lull Eng'r Co., Inc.,* 20 Cal. 3d 413, 429 (1978).  Under California law, to establish a design defect, a plaintiff may prove a design defect under either of two alternative tests—the consumer expectations test or the risk-benefit test.  *Demara v. The Raymond Corp.*, 13 Cal. App. 5th 545, 553 (2017).  McElroy's complaint asserts the "consumer expectations test" alleging that Defendants bottled, distributed and/or sold a product with a design defect because it failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.  [Doc. No. 22, at 12]; *Demara,* 13 Cal. App. 5th at 554.

An essential element of McElroy's claim is that the product's design was a substantial factor in causing her harm.  *Soule v. Gen. Motors Corp.*, 8 Cal. 4th 548, 572 (1994) (the defect in the product is a substantial factor in producing the injury).  It is not enough to simply show that an injury occurred to draw the inference that the design of the product must have been its cause.  *Barrett v. Atlas Powder Co.*, 86 Cal. App. 3d 560, 564 (1978) (liability inferences favorable to plaintiff may not be drawn from that fact the plaintiff was injured).

McElroy contends that the use of corks to seal bottles of pressurized wine by Pernod and the entire wine industry is inherently defective because corks may break leading to extraction efforts that can cause injury.  McElroy argues that the industry should be using threaded closures (i.e. screw tops) on all their wines bottled under pressure so injuries such as hers will not happen.  Under the theory of strict liability, McElroy contends that Glazer and CVS are also jointly liable as distributors and retailers of this design flawed product.

23-CV-2183-CAB-VET

The design of the product at issue, specifically the use of a cork to seal a pressurized bottle, however, was not the proximate cause of McElroy's injury.

The undisputed evidence in this case is that the bottle and cork of Sparkling Wine McElroy purchased were whole and intact when she and two others attempted to open the bottle by pulling on the cork in its intended manner. That the cork ultimately broke, regardless of how it broke, (the "how" is disputed), during the attempts to extract it was not the cause of McElroy's injury. The bottle did not break when the cork broke. McElroy's injury was not proximately caused by the product's design, i.e., the use of a cork to seal a pressurized bottle.

The injury occurred when a corkscrew was used to open the pressurized bottle of wine, which resulted in the bottle breaking. The decision to employ a corkscrew in this situation, as discussed *infra*, goes to McElroy's failure to warn claim—whether it was reasonable for the ordinary consumer to use a corkscrew on a pressurized bottle in the absence, as she alleges, of an adequate warning not to do so.

The design choice to use corks to seal pressurized wine bottles did not cause McElroy's injury. McElroy's intervening action to remove the bottle's cork with a corkscrew was the proximate cause of her injury. The Court finds as a matter of law that the evidence of the circumstances of this accident cannot sustain McElroy's burden of proof that the Defendants manufactured, distributed, and/or sold a product with a design defect that proximately caused her injury. The Defendants' motions for summary judgment on the Design Defect Claim are **GRANTED**, and the claim is dismissed with prejudice.

C. Claims for Failure to Warn (Under Strict Liability and Negligence)

Even a product designed and produced without flaw may nevertheless possess such risks to the user that without a suitable warning, it becomes "defective" simply by the absence of a warning. Manufacturers have a duty to warn consumers about the hazards inherent in their products. The seller's actual or constructive knowledge of the hazard is a requisite for strict liability for failure to warn. *Anderson v. Owen-Corning Fiberglas Corp.,* 53 Cal. 3d 987, 1000 (1991). The purpose of requiring adequate warnings is to inform

23-CV-2183-CAB-VET

consumers about a product's hazards and faults of which consumers are unaware, so that the consumer may then either refrain from using the product altogether or avoid the danger by careful use. *Taylor v. Eliott Turbomachinery Co., Inc.,* 171 Cal. App. 4th 564, 577 (2009).

McElroy contends that Defendants were aware that employing a corkscrew or other implement to remove the cork from a pressurized bottle creates a serious risk of harm, and therefore the Defendants had a duty to warn consumers of this risk. McElroy cites evidence demonstrating that Pernod was aware that other consumers had employed implements to remove corks from pressurized wines with resulting injury. [Doc. No. 121-3.] Consequently, McElroy asserts Pernod was on notice that a reasonable response by a consumer confronting a broken cork could be to use a corkscrew to remove it. Moreover, Pernod's labels after September 2013 specifically warned against ever using such an implement to open the pressurized bottle, which she asserts is further evidence that Pernod was aware of such consumer behavior in response to unyielding or broken corks.

McElroy has testified that after the cork broke, she read the label on the Sparkling Wine bottle she purchased, and it did not have any warning against the use of a corkscrew or other implement to remove the cork.[4] She asserts that in the absence of a warning, an ordinary consumer of such product would not know that employing a corkscrew or other implement to remove a broken cork from a pressurized bottle would create a risk of serious harm. Therefore, Plaintiff contends it is not an unreasonable expectation that an average consumer would attempt to do so, and she alleges the Defendants are strictly liable for failing to provide an adequate warning against such action. *See Webb v. Special Electric*

---

[4] The Sparkling Wine bottle and cork were disposed of following the accident by a third party while McElroy was getting medical attention, so this direct evidence was not available to the parties. The Court declines Defendants' motion to dismiss McElroy's claims on a spoliation theory. Although this evidence was clearly relevant to the claims and defenses in this case, McElroy was not in control of it at the time during which it was disposed, and there was no culpable state of mind on the part of the third-party witness who cleaned up the accident scene. *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1138 (N.D. Cal. 2012). The facts in this case do not support such a harsh sanction.

23-CV-2183-CAB-VET

*Co., Inc.* 63 Cal. 4th 167, 181 (2016) (A seller will be strictly liable for a failure to warn if a warning was feasible and the absence of a warning caused the plaintiff's injury.) Regarding her negligent failure to warn claim, Plaintiff must prove that the Defendants' conduct fell below the standard of care. *Id.* There is no duty to warn of known risks or obvious dangers. *Chavez v. Glock, Inc.*, 207 Cal. App 4th 1283, 1304 (2012). If a prudent seller acted reasonably in not giving a warning of an obvious danger, the seller will not have been negligent. *Webb,* 63 Cal. 4th, at 181.

The Sparkling Wine bottle was not preserved. Defendants argue that with only McElroy's "self-serving testimony" to establish what warning, or lack thereof, was on the bottle, there is insufficient evidence to create a material factual dispute. The Court disagrees. Plaintiff has presented sufficient evidence to create a factual dispute for the jury to determine: (1) whether the danger of using a corkscrew on a pressurized bottle was known to Defendants; (2) whether that danger was obvious to the average consumer of such products so that a specific warning was not required; (3) what warning the bottle at issue had regarding the danger; and (4) whether the warning was adequate to inform the average consumer of the risk.

Defendants' motion to dismiss the failure to warn claims is **DENIED**.

D. <u>Negligence</u>

McElroy's negligence claim alleges that the Defendants failed to adhere to industry standards and best practices for storage and retention of the product to ensure the safety and integrity of the product. Consequently, she asserts that Defendants violated their duty of care to consumers by improperly storing and distributing a product in a manner that proximately caused Plaintiff's injury.

Plaintiff's only evidence proffered of this asserted "industry standard and best practices," however, is the opinion of her expert Jim Goldman regarding how non-vintage sparkling wines should properly be stored and distributed at the wholesale and retail level. Mr. Goldman cites to no authority, regulation, actual industry guidelines or any evidence of any manufacturers, wholesalers or retailers adopting or adhering to his proposed

23-CV-2183-CAB-VET

"industry standards." He asserts for safety reasons the following steps are required in the distribution of non-vintage sparkling wines: 1) at all times the bottles are to be stored horizontally, 2) the bottles are to be stored in environments of controlled temperature and humidity, 3) the age of such products requires monitoring, and 4) that any non-vintage sparkling wine product has a maximum shelf life of 6 months after which it should be destroyed. [Doc. No. 117-2, at 126, 197.] Failure to adhere to this "standard" he opines is negligence and a cause of Plaintiff's injury. There is no evidence whatsoever that his proposed guidelines are a standard by which the industry operates. A jury could not reasonably conclude that failure to meet one or more of Mr. Goldman's self-created storage steps violates a duty of care.

Mr. Goldman does opine that his proffered "industry standard" for wholesale and retail storage of non-vintage wines is supported by a website operated by G.H. Mumm (not a defendant is this case) advising consumers of their vintage champagnes (not the product in this case) the best way to store vintage champagne for quality (www.mumm.com/en-ww/taste-explorer/how-to-store-champagne). This website is directed to "storing champagne at home" for best quality, including storing bottles in a dark place, on their side, at a stable temperature around 50°F and 60% to 70% humidity, and recommends purchasing magnum size bottles to protect and enhance the quality and taste of the product. The website illustrations are of small consumer-size cooling fixtures. This reference does not support his opinion that there is an industry wide standard for the shipment, storage and distribution of non-vintage sparkling wines that Defendants violated.

Plaintiff has not demonstrated a duty of care that any Defendant violated in the storage or retention of the wine at issue, and the evidence of record is wholly insufficient to create a material factual dispute. The motions for summary judgment on the negligence claim are **GRANTED**, and the claim is dismissed with prejudice.

### E. Motions to Exclude Expert Testimony

Based on the Court's rulings, the Court **GRANTS** the motions to exclude the testimony of Jim Goldman, as the causes of action on which he opines are dismissed.

23-CV-2183-CAB-VET

Regarding the remaining cause of action for failure to warn (strict liability and negligence), the Court finds this subject matter does not require an expert opinion and excludes the designated experts of all parties on this question. Fed. R. Evid. 702 (allowing opinion testimony when the expert's specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue). Whether the average consumer would know that an implement like a corkscrew should never be used on a pressurized container without an explicit warning, and whether the label on the Sparkling Wine bottle the Plaintiff purchased was a suitable warning to refrain from doing so, are determinations well within the ability of the trier of fact to determine. An expert is not required to help the jurors understand the evidence or determine a fact in issue. Such opinion testimony is **EXCLUDED**.

The Defendant's motion to exclude portions of the report of Plaintiff's expert Enrique Vega is **DENIED**. The dispute regarding his opinions goes to the weight they should be given, not the admissibility.

IV.    Conclusion

As set forth above, Defendants' motions for summary judgment on Plaintiff's claims of Strict Liability for Manufacturing Defect, Strict Liability for Design Defect, and Negligence are **GRANTED**, and those causes of action are dismissed with prejudice.

The parties will proceed to trial on Plaintiff's claims for Strict Liability and Negligence for Failure to Warn. Trial will commence on April 13, 2026 at 8:45 a.m. in Courtroom 15A. Each side is allotted ten hours to present their case including opening and closing statements, but not jury selection or instruction.

In accordance with the Scheduling Order entered in this matter, the Final Pretrial Conference will be held at 2:00 p.m. on March 13, 2026. Any motions *in limine* will be filed no later than February 27, 2026, with responses due March 6, 2026.

/////

/////

/////

23-CV-2183-CAB-VET

The motions *in limine* will be heard at the Pretrial Conference.

It is **SO ORDERED**.

Dated:  January 29, 2026

_____
Hon. Cathy Ann Bencivengo
United States District Judge

23-CV-2183-CAB-VET